HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STONER & ASSOCIATES,

    Plaintiff,

v.

JKC NAMPA, INC., et al.,

    Defendants.

CASE NO. C08-422RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for partial summary judgment (Dkt. ## 28, 38). The court has considered the parties' briefing and supporting evidence, and has heard from the parties at oral argument. For the reasons explained below, the court GRANTS IN PART and DENIES IN PART Plaintiff's motion (Dkt. # 28) and GRANTS IN PART and DENIES IN PART Defendants' motion (Dkt. # 38).

## II. BACKGROUND[1]

Plaintiff Stoner & Associates, Inc. ("S&A") develops, markets, and licenses a product called the Shopper Stopper for use in the retail automobile sales industry. The Shopper Stopper collects and presents dealership information — including inventory

---

[1] The court detailed the facts of this case in a previous order. *See* Order (Dkt. # 31). In this order, the court will describe the facts in a more summary fashion, including only those facts relevant to the analysis of the issues before the court at this time.

ORDER – 1

costs, rent, utilities, sales commissions, and non-sales staffing costs — to calculate the total cost the deal will incur on a particular automobile. The Shopper Stopper generates a one-page printout that displays multiple categories of variables to a potential buyer. The printout has three categories: car price, cash down payment, and lease options.

S&A licenses the Shopper Stopper. Licensees receive the software itself plus instruction manuals for the software and for sales techniques used in connection with the software, plus on-site training for the sales staff. On March 24, 2006, S&A entered into a licensing agreement ("the License") with Defendant JKC Nampa Automotive, Inc. ("JKC Nampa"). The License contains the following provisions:

> 3. <u>License to use programs</u>. . . . [JKC Nampa] shall not reproduce, reverse engineer, publish, license, sublease, transfer, divulge or otherwise make available the Products and confidential information sold or disclosed by [S&A]. The licensed Products shall remain the property of [S&A]. The licensed Products may be used at only one dealership.
> . . .
> 8. <u>Termination and Return of Products</u>. . . . Upon termination of this [License] [JKC Nampa] shall not directly or indirectly disclose, display, provide, transfer or otherwise make available all or any part of the Products or disclosed confidential information to any person or entity, unless [JKC Nampa] has received prior written permission from [S&A]. [JKC Nampa] shall not retain copies of the Products or any portion thereof. At no time and under no circumstances shall [JKC Nampa] reverse engineer, decompile or disassemble the Products or the confidential information or attempt to use any aspect or part of the Products in any form following termination of this [License]. In particular, upon termination of this [License], Customer shall not copy or use, in any manner or degree, any part of "The Shopper Stopper" customer sales presentation.
>
> 9. <u>Injunctive Relief and Liquidated Damages</u>. [JKC Nampa] acknowledges that [S&A], because of the unique nature of the Products and disclosed confidential information, would suffer irreparable harm in the event that [JKC Nampa] breaches its obligation under this [License] in that monetary damages would be inadequate to compensate [S&A] for such a breach. The parties agree that in such circumstances, [S&A] shall be entitled in addition to monetary relief, to injunctive relief as may be necessary to restrain any continuing or further breach by [JKC Nampa],

ORDER – 2

without showing or proving any actual damages sustained by [S&A]. Should [JKC Nampa] copy, use, or reverse engineer any part of [S&A's] Products including the software, user's guide or "The Shopper Stopper" customer sales presentation after termination of this [License], [S&A's] liquidated damages shall be $2,000 per unauthorized copy, reproduction, or use.

Stoner Decl. (Dkt. # 9), Ex. 3 (hereinafter "License").

JKC Nampa notified S&A that it was not going to renew the License in November 2007. In January 2008, S&A learned that JKC Nampa had developed its own customer sales template, called "QuickPrice," that generated a printout similar to the Shopper Stopper's printout. The QuickPrice printout has two categories: car price and cash down payment. The dealer cost categories listed in QuickPrice's car price section are the same categories listed on the Shopper Stopper's printout, and they are listed in the same order. The cash down payment section of the QuickPrice printout also calculates payment options based on different down payment amounts and financing contract durations, but displays different amounts and durations than the Shopper Stopper printout.

S&A filed this lawsuit against JKC Nampa and JKC Automotive, Inc., but has since agreed to dismiss the claims against JKC Automotive, Inc. At this point, S&A's remaining claims are for breach of contract and copyright infringement. *See* Pltf's Opp'n (Dkt. # 47) at 1. S&A moved for summary judgment on both of those claims, and JKC Nampa cross-moved for summary judgment on the copyright claim and requested that the court invalidate the License's liquidated damages clause.

### III. ANALYSIS

**A.  Standard of Review on Summary Judgment.**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving

ORDER – 3

party meets that initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### B. JKC Namps is Liable on the Breach of Contract Claim, but the Liquidated Damages Provision is Unenforceable.

S&A contends that it is entitled to judgment on its breach of contract claim because there is no dispute of fact that JKC Nampa copied portions of the Shopper Stopper's sales presentation and used them after the License was terminated. JKC Nampa argues that the License is ambiguous or unreasonable as to what actions constitute copying. JKC Nampa also contends that the License's liquidated damages clause is invalid as a penalty.

#### 1. JKC Nampa Violated the License by Using the Shopper Stopper Printout to Create QuickPrice After the License had been Terminated.

The License expressly prohibits any manner or degree of copying or using any part of the Shopper Stopper customer sales presentation after the License has been terminated. *See* License § 8. According to S&A, JKC Nampa breached this License provision when it copied the Shopper Stopper printout to create the QuickPrice printout. JKC Nampa contends that S&A's interpretation of the meaning of "copy" is unreasonable because it "could conceivably be read so broadly as to prevent any former Shopper Stopper license holder from using the phrase 'book value' verbally or in writing simply because that phrase appears on [the Shopper Stopper] 'printout.'" Defs.' Opp'n (Dkt. # 43) at 7.

ORDER – 4

That JKC Nampa has imagined an unreasonable interpretation of the term "copy" does not mean that the term is ambiguous or unreasonable. Courts avoid interpreting "contracts in ways that lead to absurd results." *Forest Marketing Enterprises, Inc. v. State*, 125 Wn. App. 104, 132 (2005). Specifically, the court "must read [a contract] as the average person would read it; it should be given a practical and reasonable rather than a literal interpretation, and not a strained or forced construction leading to absurd results." *Allstate Ins. Co. v. Hammonds*, 72 Wn. App. 664, 667 (1994).

As the court reads the License's prohibition on the copying or use of any part of the Shopper Stopper customer sales presentation, the practical and reasonable interpretation is that the License prohibits duplicating or using any substantial part of the presentation. Duplicating a single phrase like "book value" would not violate the License, but essentially duplicating the entire printout would constitute a violation.

Thus, the question before the court is whether JKC Nampa used any substantial part of the Shopper Stopper customer sales presentation to create QuickPrice. JKC Nampa contends that "customer sales presentation" is ambiguous in that it could include more than just the software and the printout, but it does not dispute that the software and the printout are included in the meaning of "customer sales presentation." S&A does not contend that JKC Nampa copied the software code of the Shopper Stopper, but a cursory comparison of the QuickPrice printout to the Shopper Stopper printout reveals that the two printouts are substantially similar. Both printouts present the same dealer cost data, and both list twenty-one financing options. Furthermore, when Shawn Smith developed the QuickPrice printout, he was provided with a copy of the "one page [sic] form the dealership was currently using." Smith Decl. (Dkt. # 19) ¶ 1. The only reasonable inference from Smith's declaration and the obvious similarities between the two printouts is that JKC Nampa copied or used aspects of the format of the Shopper Stopper printout to create the QuickPrice printout. Because the printout is part of the Shopper Stopper's

ORDER – 5

customer sales presentation, and the License prohibits the use of any aspect of the customer sales presentation after the termination of the License, JKC Nampa's use of the Shopper Stopper printout in the creation of the QuickPrice printout violates the License. There are no issues of material fact related to S&A's breach of contract claim, and the court concludes that JKC Nampa is liable on that claim.

## 2. The Liquidated Damages Provision is Unenforceable.

The License contains a liquidated damages clause, which provides:

> Should [JKC Nampa] copy, use, or reverse engineer any part of [S&A's] Products including the software, user's guide or "The Shopper Stopper" customer sales presentation after termination of this [License], [S&A's] liquidated damages shall be $2,000 per unauthorized copy, reproduction, or use.

License ¶ 9. JKC Nampa contends that the License's liquidated damages provision either provides for $2,000 in damages under the facts of this case (assuming JKC Nampa's duplication of the Shopper Stopper printout was a one-time event), or is void as a penalty (if $2,000 is assessed every time JKC Nampa creates a QuickPrice printout for a customer). S&A offers a different interpretation: $2,000 should be assessed every time a customer receives a QuickPrice printout *and subsequently buys a car*, to eliminate the profit that JKC Nampa received via an unauthorized copy of the Shopper Stopper printout.

Liquidated damages are appropriate "at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy." RCW 62A.2-718(1). The Washington Supreme Court applies a two-part test to determine the enforceability of a liquidated damages clause: "First, the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the

ORDER – 6

breach. Second, the harm must be such that it is incapable or very difficult of ascertainment." *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 559 (1987).

Before applying the two-part test to the License's liquidated damages clause, the court must determine the meaning of the clause itself, given that the parties dispute how it should be interpreted. Though S&A contends that it would be unreasonable to interpret the term "use" to mean each time a QuickPrice printout is generated, this interpretation is consistent with the License's language. The License says $2,000 per unauthorized use, not "$2,000 per unauthorized use that results in a sale." It is irrelevant that QuickPrice does not track the number of printouts generated, given that the License was signed without QuickPrice's future creation in mind. An average person would read the liquidated damages clause and conclude that it assesses $2,000 against JKC Nampa for each of JKC Nampa's unauthorized copies or uses. If S&A had intended to specify that the $2,000 only applied if an unauthorized use resulted in a sale, it could have specified that in the License.

With that interpretation in mind, the court can now apply the two-part test. First, the court must ask whether the amount fixed is a reasonable forecast of just compensation for the harm caused by the breach. The answer is no. The harm to S&A arising from JKC Nampa's use of QuickPrice is lost license fees, not lost profits. S&A admitted as much in the joint status report, stating that its damages in this case "are a simple calculation based on the license fees charged under the [License]."[2] *See* Joint Status Report ¶ 8. The number of times that a QuickPrice printout was generated is irrelevant to the measure of that harm. Therefore, the court concludes that the liquidated damages clause does not pass the first step of the enforceability test.

---

[2] S&A's new argument regarding the measure of damages is essentially an attempt to resurrect its unjust enrichment claim, which it previously dismissed. *See* Pltf.'s Opp'n (Dkt. # 47) at 1.

ORDER – 7

Though it need not apply the second part of the test, the court concludes that the damages caused by the breach (lost fees due under the License) are easily calculable. For these reasons, the court concludes that the liquidated damages clause is unenforceable.

**C.    JKC Nampa is Entitled to Judgment Against the Copyright Claim.**

S&A contends that JKC Nampa infringed on its copyright by copying the combination or "gestalt" of the information displayed in the Shopper Stopper printout. Neither party disputes that the Shopper Stopper software code is copyrightable, but S&A does not contend that JKC Nampa infringed the copyright in the code. S&A's copyright claim is limited to "the *expression* of Mr. Stoner's concepts concerning cost-based selling that [JKC Nampa] appropriated by duplicating the format of The Shopper Stopper printout." Pltf.'s Opp'n (Dkt. # 47) at 4 (emphasis in original).

S&A makes clear that it does not contend that the data or categories of data presented in the Shopper Stopper printout are copyrightable; according to S&A, "what is at issue here is the presentation of the data (the *expression* in The Shopper Stopper printout), not the data itself." Pltf.'s Opp'n (Dkt. # 47) at 6 (emphasis in original). But in this case, the inability to distinguish the expression of the Shopper Stopper printout from the idea of cost-up selling prevents the court from concluding that the Shopper Stopper printout is protectable. Ideas are not protected by copyright:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). This fundamental principle of copyright law was further explained in *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994), wherein Apple contended that Microsoft's graphical user interface for Windows infringed Apple's copyright in the Macintosh graphical user interface. The *Apple* court found that only a "thin" copyright protection applied to the Macintosh interface, because the idea of a

ORDER – 8

graphical user interface is indistinguishable from its expression, so it is only protected from virtual identical copying:

> It is not easy to distinguish expression from ideas, particularly in a new medium. However, it must be done, as the district court did in this case. As we recognized long ago in the case of competing jeweled bee pins, similarities derived from the use of common ideas cannot be protected; otherwise the first to come up with an idea will corner the market. Apple cannot get patent-like protection for the idea of a graphical user interface, or the idea of a desktop metaphor which concededly came from Xerox. . . .
>
> [W]hen an idea and its expression are indistinguishable, or "merged," the expression will only be protected against nearly identical copying. . . As we explained in *Frybarger v. International Business Machines Corp.*, 812 F.2d 525 (9th Cir. 1987), when similar features in a videogame are "'as a practical matter indispensable, or at least standard, in the treatment of a given [idea],'" they are treated like ideas and are therefore not protected by copyright. *Id*. at 530. Furthermore, as *Frybarger* holds, "the mere *indispensable* expression of these ideas, based on the technical requirements of the videogame medium, may be protected only against virtually identical copying." *Id*.

*Apple*, 35 F.3d at 1443-44. This quotation explains precisely why JKC Nampa's development of the QuickPrice printout did not infringe upon S&A's copyright: S&A's copyright protects the Shopper Stopper documents describing and illustrating Stoner's method of cost-up selling, but does not prevent others from developing a similar illustration of cost-up selling. There are only certain categories of data relevant to cost-up selling calculations, such that they are indispensable to a compilation of data to be used in a cost-up selling presentation. Therefore, the format of the Shopper Stopper's printout is protected against only virtually identical copying, which it is undisputed that JKC Nampa did not do. JKC Nampa developed its own printout based on the Shopper Stopper printout, which was not permitted under the License but does not constitute copyright infringement. Thus, though JKC Nampa is liable to S&A for breach of the License, JKC Nampa is entitled to judgment against the copyright claim.

ORDER – 9

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Plaintiff's motion (Dkt. # 28) and GRANTS IN PART and DENIES IN PART Defendants' motion (Dkt. # 38).

DATED this 30th day of March, 2009.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 10